*In re* ESTATE OF REGINALD SUGGS, JR., A Minor.
First District (4th Division)   No. 84—2445

Opinion filed November 20, 1986.

Jacquelyn C. Haynes, of Howard Pomper & Associates, of Chicago, for appellant Pharell Mae Lewis.

No brief filed for appellee.

JUSTICE JOHNSON delivered the opinion of the court:

Pharell Mae Lewis petitioned the circuit court of Cook County to appoint her as guardian of her nephew, Reginald B. Suggs, Jr., a minor. Reginald's grandmother, Gladys Williams, objected to Lewis' guardianship petition and cross-petitioned the court to appoint her as guardian of Reginald. At the close of an evidentiary hearing, the trial court awarded custody of Reginald to Williams and appointed her as his guardian. Lewis appeals, contending that (1) the trial court lacked jurisdiction to appoint Williams as guardian because Reginald's father

(Lewis' brother) nominated her as Reginald's guardian in his will, and (2) even if the trial court possessed jurisdiction to determine guardianship, its appointment of Williams was not in the best interest of Reginald.

We reverse and remand.

The record shows that Reginald Suggs, Jr., was born on December 29, 1981, to Linda Suggs and Reginald Suggs, Sr. (hereinafter Suggs). Linda died less than two weeks after giving birth to Reginald. Suggs then asked Lewis, his sister, to live with him and his infant son. She did so and cared for Reginald until the date of the trial court's guardianship order.

On October 4, 1982, Suggs executed a valid will that states, in pertinent part, as follows:

## "SECTION TWO

In the event that my son, REGINALD B. SUGGS, JR. has not attained the age of 18 at the time of my death, I hereby nominate and appoint my sister, PHARELL MAE LEWIS, of legal age and an Illinois resident, to serve as guardian over the estate and person of my son, REGINALD B. SUGGS, JR., and I direct thas [sic] she shall serve in said capacity without bond or surety."

Suggs died on February 1, 1984. Lewis filed a petition for guardianship of Reginald on or about February 21, 1984. She filed an amended petition on May 11, 1984, in which she stated that the approximate value of Reginald's personal estate was $5,000 and that of his real estate was $55,000. Lewis also estimated the amount of Reginald's anticipated gross annual income and other receipts to be $13,700.

Williams is Reginald's maternal grandmother. On March 22, 1984, she filed an objection to Lewis' guardianship petition and cross-petitioned the court to appoint her as the minor's guardian. Williams alleged, essentially, that (1) Lewis failed to mention in her guardianship petition that Reginald inherited from his father real and personal property; (2) she and Reginald's stepsister, Christiana Williams, visited Reginald twice per week, but after Suggs' death, Lewis denied them access to Reginald despite Williams' requests on the telephone and in person; and (3) it would be in the best interest of Reginald that the court appoint her as his guardian for various reasons, including the fact that she is Christiana's guardian and, therefore, Reginald would "have the most normal approximation of a family under the circumstances." On that day, the trial court granted Williams visitation of Reginald.

The trial court held an evidentiary hearing wherein it heard testimony from witnesses that Lewis and Williams presented. Lewis' witnesses were herself, a brother, a sister, and a baby-sitter who occasionally sat for Reginald. They all testified, essentially, that Lewis cared for Reginald, that she would continue to do so, and that they knew of no reason for not appointing her as his guardian.

Williams testified on her own behalf and called Lewis as an adverse witness. Williams testified concerning her allegations that Lewis denied her access to Reginald after Suggs died, despite her requests to visit him. Williams also testified that when she had visited Reginald, he appeared to her to be slow in learning speech and toilet training for a child of his age. Williams also presented stipulated testimony as to her good character and fitness.

After hearing the evidence, the trial court appointed a guardian *ad litem* and directed the social services department of the circuit court of Cook County to investigate Reginald's physical and mental condition, the households of Lewis and Williams, and other relevant factors in the court's determination of Reginald's guardianship. The court also ordered continued visitation of Reginald by Williams.

On September 11, 1984, having received the report of the social services department, which reached no substantive conclusions, the trial court held a hearing wherein it heard the report of the guardian *ad litem*. She reported that she visited each household and observed how both Lewis and Williams interacted with Reginald. She found that Williams was sincere and genuine. The guardian *ad litem* further reported that Williams did not believe Lewis to be a bad person; rather, Williams simply wanted custody of Reginald.

The guardian *ad litem*'s observations of Lewis were equally positive. She concluded that the trial court's appointment of either Lewis or Williams as Reginald's guardian would be in his best interest. She further stated that Reginald would be in no danger or experience no substantial injustice by being in the custody and guardianship of either Lewis or Williams. The guardian *ad litem* lastly recommended a very liberal visitation order for the loser of the guardianship petition.

The trial court then awarded custody of Reginald to Williams and appointed her as his guardian. The court also ordered visitation of Reginald for Lewis. Lewis appeals.

■ We initially note that Williams failed to file with this court an appellee's brief. We may, however, search the record and decide the merits, if justice requires. Further, if the appellant's brief demonstrates *prima facie* reversible error and if the record supports the contentions in the brief, we may reverse the judgment of the trial court.

*First Capitol Mortgage Corp. v. Talandis Construction Corp.* (1976), 63 Ill. 2d 128, 133, 345 N.E.2d 493, 495.

# I

■ Lewis first contends that the trial court lacked jurisdiction to appoint Williams as Reginald's guardian because Suggs nominated her as the minor's guardian in his will.

Section 11—5 of the Probate Act of 1975 provides, in pertinent part, as follows:

"Sec. 11—5. Appointment of guardian.

(a) Upon the filing of a petition by a reputable citizen of this State or on its own motion, the court may appoint a guardian of the person or estate, or both, of a minor whenever it appears necessary or convenient.

(b) A parent of an unmarried minor or of a child likely to be born may by will nominate a guardian of the person and of the estate of such child to continue during his minority or for a less time, but if the surviving parent is a fit and competent person, no such nomination deprives him of the custody, nurture, tuition and education of the child or the right to nominate by his will the guardian of the person of the child. Before a testamentary guardian of the estate of the minor can act, he must be appointed by the court of the proper county and give the bond prescribed in Section 12—2." (Ill. Rev. Stat. 1983, ch. 110½, par. 11—5.)

The trial court has inherent, plenary jurisdiction to appoint guardians for minors independent of any authority that the Probate Act or other legislation confers. (*In re Guardianship of Smythe* (1965), 65 Ill. App. 2d 431, 441, 213 N.E.2d 609, 613.) Testamentary guardianship, however, does not exist at common law; it is purely statutory. *People ex rel. Hanawalt v. Small* (1908), 237 Ill. 169, 172, 86 N.E. 733, 734; see *In re Estate of McCandless* (1963), 44 Ill. App. 2d 400, 195 N.E.2d 222 (abstract of opinion).

Lewis argues that a valid testamentary nomination pursuant to the statute removes all discretion from the trial court and requires the trial court to appoint the testamentary nominee as guardian. She cites *Holmes v. Field* (1851), 12 Ill. 424, where our supreme court held that the probate court lacked jurisdiction to appoint a guardian where a testator had already named the same person as guardian in his will. The court reasoned that the guardian "was already, by the will of the testator, appointed guardian to the complainant; and that appointment was as perfect, as complete, and as absolute, during the time prescribed by

the will, as it could be made; and the appointment by the Probate Court, as if by way of compliment to the will, was an act of supererogation, and was entirely nugatory." 12 Ill. 424, 427.

■ We conclude that a trial court has jurisdiction to appoint a guardian other than a testamentary nominee. The statute that the *Holmes* court interpreted was very different from the law as it exists today. The 1845 version of the statute essentially provided that a father of an unmarried child under the age of 21 could "dispose of the custody and tuition of such child during its minority" by a deed or will. The statute further provided that this disposition vested the testamentary guardian with all of the rights, powers, duties, and obligations of a guardian. When the will became effective, the testamentary guardian could immediately take custody of the minor and begin exercising the responsibilities of a guardian. (Ill. Rev. Stat. 1845, ch. 47, pars. 17 through 19.) The *Holmes* court correctly found that "the father is vested with authority to dispense with provisions of the statute, which must in all cases apply to and govern guardians appointed by the Probate Court; so that the authority conferred upon the father, is greater than that conferred upon the Court; and when the right has been exercised by the former, there is no room left for the Court to act." *Holmes v. Field* (1851), 12 Ill. 424, 426.

The statute as it exists today, however, provides that the court must appoint the guardian for a minor in all cases. The statute allows a testator to nominate a guardian, but the court must still appoint the testamentary nominee as guardian. Ill. Rev. Stat. 1983, ch. 110½, par. 11—5.

The sole responsibility of the trial court in appointing a guardian is to provide for the best interests and welfare of the minor. The court must protect the minor child first; the feelings and desires of the adult parties are inferior in this regard. (*In re Estate of Stark* (1975), 33 Ill. App. 3d 626, 628-29, 342 N.E.2d 234, 236.) This was so even in 1851 (*Petition of Smith* (1851), 13 Ill. 138, 140-41.) Therefore, we hold that the trial court had jurisdiction to appoint Williams as guardian of Reginald although Suggs nominated Lewis as testamentary guardian.

## II

■ Lewis next claims that even if the "best interest of the child" standard applies to a testamentary nomination for guardianship, the trial court nevertheless erred in appointing Williams as Reginald's guardian. Lewis argues that the trial court's guardianship determination was not in Reginald's best interests and was against the manifest weight of the evidence. We agree.

In assigning error to the trial court's guardianship determination, Lewis uses the analysis contained in section 602(a) of the Illinois Marriage and Dissolution of Marriage Act (hereinafter Marriage and Dissolution Act, or Act), which provides as follows:

"Sec. 602. Best interest of child.

(a) The court shall determine custody in accordance with the best interest of the child. The court shall consider all relevant factors including:

(1) the wishes of the child's parent or parents as to his custody;

(2) the wishes of the child as to his custodian;

(3) the interaction and interrelationship of the child with his parent or parents, his siblings and any other person who may significantly affect the child's best interest;

(4) the child's adjustment to his home, school and community;

(5) the mental and physical health of all individuals involved; and

(6) the physical violence or threat of physical violence by the child's potential custodian, whether directed against the child or directed against another person but witnessed by the child." Ill. Rev. Stat. 1983, ch. 40, par. 602(a).

We should not constrain the primary obligation of the courts to determine guardianship according to the best interest of the child beyond the limitations that the Probate Act imposes. The standards contained in the Marriage and Dissolution Act are not mandatory in guardianship proceedings. Accordingly, a court may make an initial guardianship determination without reference to the standards set forth in section 602(a) of the Act. (*In re Adoption of Scheidt* (1980), 89 Ill. App. 3d 92, 97, 411 N.E.2d 554, 558.) We note, however, that a trial court should consider, where relevant, the factors listed in section 602(a) of the Marriage and Dissolution Act because they are important considerations in ensuring that the guardianship of a minor corresponds to his or her best interest. 89 Ill. App. 3d 92, 97, 411 N.E.2d 554.

Applying these principles to the case at bar, we conclude that the trial court's guardianship determination was not in Reginald's best interest. The second factor listed in section 602(a) of the Act is the wishes of the child as to his or her custodian. This is inapplicable here since Reginald was only two years old at the time of the hearing. Addressing the third through the sixth factors, the record shows that the trial court's appointment of either Lewis or Williams as Reginald's guardian would be in his best interest.

■ This leaves the first factor: the wishes of the child's parents as to his or her custody. With all of the other factors balancing evenly, this factor is determinative. Suggs stated in his will that he wanted Lewis, his sister, to be the guardian of his son. He could not have made his wishes any plainer. Therefore, we hold that the best interest of Reginald rests in Lewis as his guardian, and that the trial court's appointment of Williams as Reginald's guardian was against the manifest weight of the evidence.

Because we reverse the judgment of the trial court as being against the manifest weight of the evidence, we need not address the other issues that Lewis raises, namely, that the trial court erred in not appointing a guardian *ad litem* and ordering an investigation until after the hearing and that the trial court erred in considering lines of descent in determining guardianship.

For the foregoing reasons, the judgment of the circuit court of Cook County is reversed, and the cause is remanded with directions that it award custody of Reginald B. Suggs, Jr., to Pharell Mae Lewis and appoint her as his guardian and that it hold further proceedings not inconsistent with this opinion.

Reversed and remanded.

LINN, P.J., and McMORROW, J., concur.