TAMEKA STEVENSON, a Minor, by her Guardian, Magna Bank, Plaintiff-Appellee, v. HAWTHORNE ELEMENTARY SCHOOL *et al.*, Defendants (Louella D. Stevenson, Indiv. and as Mother and Next Friend of Tameka Stevenson, a Minor, Intervenor-Appellant).

Fifth District   No. 5—89—0112

■■■■■

Opinion filed July 23, 1990.

HOWERTON, J., dissenting.

Gary L. Smith, of Deffenbaugh, Loewenstein, Hagen, Oehlert & Smith, of Springfield, and Don Cary Collins, of Belleville, for appellant.

Edward F. Brennan and Douglas B. McKechan, both of Brennan, Cates & Constance, of Belleville, for appellee.

JUSTICE HARRISON delivered the opinion of the court:

This is an appeal from an order of the circuit court of St. Clair County which appointed the trust department of Magna Bank, N.A. (Magna Bank), as guardian of the estate of Tameka Stevenson and ordered the bank to prosecute a personal injury action on her behalf. For the reasons which follow, we affirm.

The litigation which gave rise to this appeal commenced when Henry Stevenson brought an action in the circuit court of St. Clair County in his capacity as next friend of his daughter, Tameka Stevenson, to recover damages for personal injuries which Tameka sustained when she was hit by a school bus while crossing the street. After Henry Stevenson filed his complaint, Louella Stevenson, Tameka's mother and Henry's ex-wife, filed a separate personal injury action on behalf of Tameka based on the same accident. When Mr. Stevenson learned of the second action, he petitioned for appointment of a guardian of Tameka's estate pursuant to the Probate Act of 1975 (Act) (Ill. Rev. Stat. 1987, ch. 110½, par. 1—1 *et seq.*). In that petition, Mr. Stevenson requested that the court-appointed guardian be a bank. Louella Stevenson, in turn, filed a motion for leave to intervene in the original case brought by Mr. Stevenson and to be given the right to prosecute that action as Tameka's next friend. She also asked that the circuit court deny Mr. Stevenson's petition for appointment of a bank as Tameka's guardian.

A hearing on these motions was conducted on January 20, 1989. At that hearing, Louella Stevenson's attorney made an oral request for a continuance so that his client could appear personally and give evidence. That motion was denied, and the hearing proceeded. At the conclusion of the hearing, the circuit court denied both Louella Stevenson's motion for leave to intervene and Henry Stevenson's petition for appointment of a guardian. On its own motion, however, the court appointed Magna Bank as guardian of Tameka's estate and directed the bank to prosecute the personal injury action on her behalf.

Louella Stevenson now appeals. We have jurisdiction pursuant to Supreme Court Rule 304(b)(1) (107 Ill. 2d R. 304(b)(1)).

■ On this appeal, Louella Stevenson first contends that the circuit court's order appointing Magna Bank as guardian must be set aside because she was denied the opportunity to appear at the guardianship hearing and present evidence. Mrs. Stevenson has cited no authority, however, which indicates that a hearing was even required. The circuit court's appointment of Magna Bank as the guardian was authorized by section 11—5(a) of the Probate Act (Ill. Rev. Stat. 1987, ch. 110½, par. 11—5(a)), which provides that "on its own motion, the court may appoint a guardian of the person or estate, or both, of a minor whenever it appears necessary or convenient." Although section 11—10.1 of the Probate Act (Ill. Rev. Stat. 1987, ch. 110½, par. 11—10.1) does appear to contemplate a hearing where a party has petitioned for appointment of a guardian, nothing in the Act suggests that a hearing is necessary where, as here, the guardian is appointed by the court on its own motion.

■ In any case, a hearing was held here, and Louella Stevenson does not dispute that she received notice of that hearing within the period specified by section 11—10.1(a) of the Probate Act (Ill. Rev. Stat. 1987, ch. 110½, par. 11—10.1(a)). Louella Stevenson was represented at that hearing by her attorney. Mrs. Stevenson's attorney did not make his request for a continuance so that his client could appear personally and give evidence until the hearing was underway. Whether that continuance should have been granted rested with the sound discretion of the circuit court (see *Delgatto v. Brandon Associates, Ltd.* (1989), 131 Ill. 2d 183, 195, 545 N.E.2d 689, 695), and no abuse of discretion is apparent here.

■ Another argument raised by Louella Stevenson is that the procedure followed by the circuit court in appointing the bank as guardian of Tameka's estate was so deficient that she was denied due process of law under the State and Federal constitutions. She also claims that the circuit court erred in denying her motion for leave to intervene pursuant to section 2—408 of the Code of Civil Procedure (Ill. Rev. Stat. 1987, ch. 110, par. 2—408). We doubt that this second argument is even properly before us, for an order denying intervention cannot be appealed unless the trial court has made "an express written finding that there is no just reason for delaying enforcement or appeal" as required by Supreme Court Rule 304(a) (107 Ill. 2d R. 304(a)). (*Monticello College v. Scott* (1973), 13 Ill. App. 3d 133, 299 N.E.2d 778.) No such finding was entered or requested in this case. Jurisdictional problems aside, however, we think that these two argu-

ments are so completely without foundation that they merit no discussion.

Finally, Louella Stevenson contends that the circuit court erred in appointing Magna Bank as Tameka's guardian because she had been awarded custody of Tameka when her marriage to Mr. Stevenson was dissolved, and under the standards set forth in the Illinois Marriage and Dissolution of Marriage Act (Ill. Rev. Stat. 1987, ch. 40, par. 101 *et seq.*), she is therefore the person who should have been permitted to prosecute the personal injury action on Tameka's behalf. This argument must also fail. The proceeding before us concerns the appointment of a guardian under the Probate Act, not a custody dispute under the Illinois Marriage and Dissolution of Marriage Act. The standards set forth in the Illinois Marriage and Dissolution of Marriage Act are not mandatory in guardianship proceedings. Accordingly, in a proceeding under the Probate Act, a court may make an initial guardianship determination without reference to the standards set forth in the Illinois Marriage and Dissolution of Marriage Act. *In re Adoption of Scheidt* (1980), 89 Ill. App. 3d 92, 97, 411 N.E.2d 554, 558.

The Probate Act plainly authorizes the appointment of a guardian to represent a minor in legal proceedings. (Ill. Rev. Stat. 1987, ch. 110½, pars. 11—5(a), 11—13(d).) Nothing in the Act suggests that the guardian or next friend must be the custodial parent. Section 11—3(a) of the Act (Ill. Rev. Stat. 1987, ch. 110½, par. 11—3(a)) states simply:

> "A person who has attained the age of 18 years and is a resident of the United States, is not of unsound mind, is not an adjudged disabled person as defined in this Act and has not been convicted of a felony, is qualified to act as guardian of the person and, if he is a resident of this State, as guardian of the estate. One person may be appointed guardian of the person and another person appointed guardian of the estate."

The Act also provides that the circuit court has the authority "to appoint or allow *any person* as the next friend of a ward to commence *** any proceeding in his behalf." (Emphasis added.) Ill. Rev. Stat. 1987, ch. 110½, par. 11—13(d).

Under Illinois law, the determining question in a guardianship proceeding is the best interests and welfare of the minor (*In re Marriage of Russell* (1988), 169 Ill. App. 3d 97, 102, 523 N.E.2d 193, 197), not who has custody of the child. Just because a person has custody of a minor does not necessarily mean that it will be in the best interests of the minor to have that person prosecute a claim on the mi-

nor's behalf. A parent who is skilled at child rearing may be wholly unsuited to take responsibility for maintaining a legal action to obtain redress for the child's injuries.

Concern has been expressed that appointing someone other that the custodial parent as guardian of the child's estate for purposes of maintaining a legal action will intrude upon the prerogatives of the custodial parent. What is at issue here, however, is not the prerogatives of the custodial parent, but the best interests of the child. Through the Probate Act (Ill. Rev. Stat. 1987, ch. 110½, par. 1—1 *et seq.*), the legislature has established a system for insuring that the best interests of the child will be protected in litigation involving the child's rights. If that system is flawed, that is something for the legislature and not this court to correct.

■■ Under the laws that presently exist, a guardianship determination will not be disturbed unless the trial court has clearly abused its discretion or its decision is against the manifest weight of the evidence. (*In re Marriage of Russell* (1988), 169 Ill. App. 3d 97, 103, 523 N.E.2d 193, 197.) Pursuant to this standard, no basis exists for disturbing the circuit court's order appointing Magna Bank as the guardian of the estate of the minor child. Accordingly, that order is affirmed.

Affirmed.

CHAPMAN,* J., concurs.

JUSTICE HOWERTON dissenting:

I cannot join this decision, because, I believe, it is marked with a twofold defect.

First, this decision restricts the plenary authority of the custodial parent granted to her by a circuit court pursuant to the Illinois Marriage and Dissolution of Marriage Act (Ill. Rev. Stat. 1987, ch. 40, par. 608(a)).

Second, it rewards the winner of a race to the courthouse with a preference and penalizes the loser: The preference granted to the winner is freedom from the burden of persuasion; the penalty assessed to the loser is not being able to act as next friend, unless the burden of persuasion has been undertaken and met.

---

*Justice Welch participated in oral argument. Justice Chapman was later assigned to this case in substitution for Justice Welch, and Justice Chapman has read the briefs and has listened to the tape of oral argument.

# I

The question of who is to initiate a lawsuit for a child, a parent who has custody or a noncustodial parent, should not be determined under the Probate Act (Ill. Rev. Stat. 1987, ch. 110½, par. 11—5), but rather should be determined under section 608(a) of the Illinois Marriage and Dissolution of Marriage Act. Ill. Rev. Stat. 1987, ch. 40, par. 608(a).

Section 608(a) of the Illinois Marriage and Dissolution of Marriage Act grants full authority to the custodial parent to determine the child's upbringing. Usage here of the term "full" to describe the boundaries of the custodial parent's authority is fair, because the Act grants authority to the custodial parent and places limitations on that authority only on motion of the noncustodial parent and hearing by the court. Plenary, a term most apt in the circumstances of this case, is an acceptable substitute for the term "full."

Section 608(a) provides:

> "Except as otherwise agreed by the parties in writing at the time of the custody judgment or as otherwise ordered by the court, *the custodian may determine the child's upbringing*, including but not limited to, his education, health care and religious training, *unless the court, after hearing, finds, upon motion by the noncustodial parent, that the absence of a specific limitation of the custodian's authority would clearly be contrary to the best interests of the child.*" (Emphasis added.) Ill. Rev. Stat. 1987, ch. 40, par. 608(a).

In contrast, guardianship proceedings brought under the Probate Act determine whether it is in the best interests of a child to appoint someone to have authority over the child or his estate.

In this case, the mother already had authority over the child; she had been awarded custody.

The issue here, therefore, is not that addressed by the majority, namely: whether someone should be appointed Tameka's guardian; rather, the issue is whether imposing limitations on the authority of her mother is in Tameka's best interests.

There are no Illinois cases on this issue; however, I believe included within the language of section 608(a), "determine the upbringing of the child," is the implicit authority which gives the custodial parent the right to initiate litigation on behalf of the child. See *Montoya v. Bebensee* (Col. 1988), 761 P.2d 285; *Rhoades v. Rhoades* (1975), 188 Colo. 423, 535 P.2d 1122.

This implicit authority is found by the conferral of substantial authority upon the custodial parent by the statute (Ill. Ann. Stat., ch.

40, par. 608, Historical and Practice Notes, at 55 (Smith-Hurd Supp. 1990); *Dymek v. Nyquist* (1984), 128 Ill. App. 3d 859, 469 N.E.2d 659), and also from the fact that the statute is designed to promote privacy and to prevent the noncustodial parent from intruding upon the prerogatives of the custodial parent. See Ill. Ann. Stat., ch. 40, par. 608, Historical and Practice Notes, at 81 (Smith-Hurd 1980).

This design serves the best interests of the child by shielding the custodial parent from harassment by the noncustodial parent. So, too, the statute augments the finality of custody judgments without jeopardizing the child's welfare. See Ill. Ann. Stat., ch. 40, par. 608, Historical and Practice Notes, at 81 (Smith-Hurd 1980).

Section 608(a) of the Marriage and Dissolution of Marriage Act, in contrast to section 11—5 of the Probate Act, focuses on the full, plenary authority of a custodial parent and allows a limitation on that authority only when it is clearly in the best interests of the child. The sweep is broader, for here, more is encompassed than a child's estate, a child's rights; instead, encompassed is the full panoply of childhood itself. The goal is that a healthy adult will molt from childhood. The path selected is one of discouraging interferences on the part of the noncustodial parent so as to foster stability and peace for the child. Section 608(a) announces a policy of reluctance to upset the equilibrium that has been struck by a judgment awarding custody.

A custodial parent, I would hold, has plenary authority over a child, that should include the right to initiate legal action.

A custodial parent, therefore, should have the exclusive right to bring a lawsuit as next friend for the child unless: (1) the custodial parent agrees that the noncustodial parent should bring the lawsuit as next friend; or (2) the noncustodial parent shows to a court in an evidentiary hearing that it is in the best interests of the child that the noncustodial parent bring the lawsuit.

## II

If a court proceeds under the Probate Act, then the question of who bears the burden of persuasion depends on a "race to the courthouse."

The parent who files first bears no burden of persuasion. Instead, the parent who objects and who seeks to displace the other as next friend bears the burden of proving that it is in the best interests of the child that she proceed. Thus, if the custodial parent has lost the race to the courthouse, she will bear the burden of persuading the court that it is in best interests of the child that she act as next friend, notwithstanding that another court already has found it in the

best interests of the child that she be given the plenary authority to determine the child's upbringing. Under the rule announced by the majority, the noncustodial parent will win when the evidence is evenly balanced, a win predicated on winning the race to the courthouse.

This is tilted. It is tilted away from the intent of the Illinois Marriage and Dissolution of Marriage Act. I do not believe the legislature intended this result.

On the other hand, if the court were to choose to proceed under the Illinois Marriage and Dissolution of Marriage Act, then the burden of persuasion always would be on the noncustodial parent, for that act, in effect, says that the custodian may determine the child's upbringing, unless the court finds on motion by the noncustodial parent that it would be in the best interests of the child to place a limitation on the custodian's authority. Thus, if this procedure were adopted, when a court was faced with a choice, the noncustodial parent would bear the burden and the custodial parent would get the benefit. The custodial parent would win when the evidence is evenly balanced, a sort of preference to which the parent who already has been given custody by a court justifiably is entitled.

This, too, is tilted, but in the direction of harmony, stability and towards the intent of the Illinois Marriage and Dissolution of Marriage Act.

Either the custodial parent must get this preference, this benefit of bearing no burden and winning all cases where the evidence is evenly balanced, or the party who files first must get it. The scales must be tilted in favor of one or the other. There is no alternative. Just as a circuit court must choose, so must we.

It does not seem to me to be an answer to the fact that we are called on to tilt the scale one way or the other to say, as does the majority, that

"what is at issue *** is not the prerogatives of the custodial parent, but the best interests of the child. [And,] [t]hrough the Probate Act [citation], the legislature has established a system for insuring *** the best interests of the child ***. [And,] [i]f that system is flawed, that is something for the legislature and not this court to correct." 200 Ill. App. 3d at 996.

This is no answer, because both the Probate Act and the Illinois Marriage and Dissolution of Marriage Act are law; both look like they apply; both are to be read *in pari materia*; we must decide this case presented to us, which necessarily and unavoidably forces us to choose one approach or the other; to say "let the legislature fix it" just diverts attention from the fact that we have opted for the Pro-

bate Act over the Illinois Marriage and Dissolution of Marriage Act, and placed upon the custodial parent the burden of persuading a court that the best interests of the child require her to act as next friend, even though another court has said the best interests of the child require her to have custody, to have plenary authority over the child.

Lastly, I think the type of hearing that was held here was insufficient, because no evidence was taken. I would hold that a full evidentiary hearing should be afforded before a court can determine the best interests of a child.

I respectfully dissent.