(No. 70696

TAMEKA STEVENSON, a Minor, by Her Guardian, Magna Bank, Appellee, v. HAWTHORNE ELEMENTARY SCHOOL, EAST ST. LOUIS SCHOOL DISTRICT No. 189, *et al.* (Louella D. Stevenson, Indiv. and as Mother and Next Friend of Tameka Stevenson, a Minor, Appellant).

*Opinion filed September 19, 1991.*

Gary L. Smith, of Deffenbaugh, Loewenstein, Hagen, Oehlert & Smith, P.C., of Springfield, and Don Cary Collins, of Belleville, for appellant.

Rosemary D. McGuire, of Brennan, Cates & Constance, of Belleville, for appellee.

JUSTICE BILANDIC delivered the opinion of the court:

This appeal arises from an order of the circuit court of St. Clair County, probate division, which *sua sponte* appointed Magna Bank as the guardian of the estate of Tameka Stevenson, a minor, to prosecute a personal injury action on Tameka's behalf. (Ill. Rev. Stat. 1987, ch. 110½, par. 11—5(a).) Tameka's mother, Louella Stevenson, appealed this order in her capacity as Tameka's next friend. (134 Ill. 2d R. 304(b).) The appellate court, with one justice dissenting, affirmed the order of the probate division. (200 Ill. App. 3d 991.) We granted the mother's petition for leave to appeal. 134 Ill. 2d R. 315.

On November 26, 1985, Louella and Henry Stevenson, Tameka's natural mother and father, obtained a judgment of dissolution of their marriage from the circuit court of St. Clair County. The sole "care, custody, control and education" of Tameka and her older brother was awarded to the mother. The father was required to pay child support in the amount of $77.80 per week, beginning retroactively on August 19, 1985. From August 1985 to August 1989, the father paid only $148 for the support of his two children. The record reveals that he was employed. He was twice cited for contempt by the

circuit court for his failure to fulfill his child-support obligations. On August 22, 1989, during the pendency of this action, the circuit court entered a judgment against the father in the amount of $16,112.20 for delinquent child-support payments.

On December 5, 1988, Tameka Stevenson, the eight-year-old daughter of Henry and Louella Stevenson, was hit by a school bus while walking across the street. The bus was owned and operated by defendant Vandalia Bus Lines. Tameka was seriously injured in this accident. On December 14, 1988, Tameka's mother hired an attorney to prosecute her daughter's personal injury action. The following day, December 15, 1988, Tameka's attorney sent attorney lien letters to defendant Vandalia Bus Lines and its insurer, State Farm Insurance Company, and began to investigate the bus accident in anticipation of instituting litigation on Tameka's behalf. On January 4, 1989, Tameka's father, Henry, filed a personal injury complaint concerning the bus incident, designating himself as Tameka's next friend. On January 9, 1989, Tameka's attorney promptly informed Henry's attorney by letter that he had already been retained to represent Tameka and asserted the mother's right to act as Tameka's next friend.

On January 12, 1989, in an apparent attempt to prevent the mother from acting as Tameka's next friend in the personal injury litigation, the father filed a petition seeking the appointment of a guardian of Tameka's estate. (Ill. Rev. Stat. 1987, ch. 110½, par. 11—5(a).) The petition was set for accelerated hearing on January 20, 1989. On January 19, 1989, the mother, as Tameka's next friend, commenced separate legal proceedings to recover damages for injuries sustained by her daughter in the bus accident. In addition, the mother filed a motion to intervene in the case filed by the father (Ill. Rev. Stat. 1987, ch. 110, par. 2—408), a motion for automatic

change of venue (Ill. Rev. Stat. 1987, ch. 110, par. 2—1001), and a motion to dismiss the complaint filed by the father as Tameka's next friend (Ill. Rev. Stat. 1987, ch. 110, par. 2—619) or, in the alternative, to transfer the case to the probate division to consider the father's petition to appoint a guardian. All motions were set for hearing on January 20, 1989, before the circuit court of St. Clair County.

On January 20, 1989, the circuit court granted Louella's petition for automatic change of venue and transferred the case to the probate division. After hearing arguments of counsel, on the same day, the probate division denied the mother's motion to intervene in the father's lawsuit. The court then refused to rule on the mother's motion to dismiss the father's suit because it decided that the motion was no longer before the court. The probate division also denied the father's petition for guardianship. However, finding that a multiplicity of lawsuits might be detrimental to the injured child, the probate division, *sua sponte*, appointed Magna Bank as the guardian of Tameka's estate pursuant to section 11—5(a) of the Probate Act of 1975 (the Act) (Ill. Rev. Stat. 1987, ch. 110½, par. 11—5(a)). The probate division further ordered the guardian to prosecute Tameka's personal injury action on her behalf pursuant to section 11—13(d) of the Act (Ill. Rev. Stat. 1987, ch. 110½, par. 11—13(d)).

Louella, as mother and next friend of Tameka, appealed the probate division's appointment of the bank as guardian of Tameka's estate. The appellate court affirmed, with one justice dissenting, holding that the probate division did not abuse its discretion in appointing the bank as the guardian of Tameka's estate. 200 Ill. App. 3d 991.

I

The ultimate issue to be resolved is whether the pro-

bate division abused its discretion by appointing a third party, rather than either natural parent, to prosecute the personal injury claim of their minor child.

It is undisputed that a minor child does not have the legal capacity to maintain litigation in his or her own name. (*City of Danville v. Clark* (1976), 63 Ill. 2d 408, 411.) It is also undisputed that legal action may be maintained on behalf of the minor child by his or her natural mother or father. (See *In re Chicago, Rock Island & Pacific R.R. Co.* (7th Cir. 1986), 788 F.2d 1280, 1282; *Clark*, 63 Ill. 2d at 411.) Under certain circumstances, the legal action may be maintained by a court-appointed guardian or next friend. Ill. Rev. Stat. 1987, ch. 110½, par. 11—13(d).

In the case at bar, we are asked to resolve the conflicting claims of three parties—the natural mother, the natural father, and a court-appointed corporate guardian.

## A

The natural father was the first to sue and therefore invokes the principle of "first in time is first in right." On the other hand, the natural mother was the first to retain counsel, cause attorney liens to be asserted against the defendant and its insurer, and to commence an investigation of facts to establish liability. The mother's suit, however, was filed 15 days after the father's case. Both cases seek the same relief against the same parties.

It is a natural parental instinct to look after the best interests of the child, and seeking a recovery of damages for the child against a tortfeasor would motivate parental action. A new dimension is added to this case because the marriage between the parents was legally dissolved. The mother was awarded the custody of the two minor children (including the child injured in the accident). The father was ordered to pay child support and was granted

the usual visitation rights. Although the judgment of dissolution terminates the marriage, it does not affect the parent-child relationship. The basic legal rights and obligations remain, subject to the terms of the judgment of dissolution.

The custodial parent may maintain a legal action on behalf of the child. However, the award of custody does not *per se* exclude the rights of the noncustodial parent to sue on behalf of the child. Both remain natural parents of the child and custody is subject to change as circumstances change. (See *Roth v. Roth* (1977), 52 Ill. App. 3d 220, 225.) The best interests of the child remain paramount. *Miezio v. Miezio* (1955), 6 Ill. 2d 469, 472.

Under the unique facts of this case, the dispute between the mother and the father for the privilege of maintaining the tort action as next friend on behalf of the minor should be resolved in favor of the mother. The record supports the fact that the father was approximately 200 weeks in arrears in child-support payments at the time that he filed suit as "next friend" of the child. His delinquency was adjudged contemptuous and, on August 22, 1989, the arrearage was reduced to a judgment in the sum of $16,112.20.

A noncustodial, natural parent may maintain an action on behalf of a minor child provided that it is in the best interests of the child and that there is no conflict of interest. (See *Roodhouse v. Roodhouse* (1890), 132 Ill. 360, 362; *Patterson v. Pullman* (1882), 104 Ill. 80, 82.) In the case at bar, the father must defend himself against the child's efforts to collect on the judgment against the father. He cannot maintain an action as "next friend" of the child and, at the same time, defend against the child judgment-creditor. The conflict of interest is obvious. In addition, the best interests of the child would not be served by allowing a parent who is con-

temptuously delinquent to prosecute a tort claim as "next friend."

The record does not reveal any reason why the child's best interests would not be served by allowing the mother to maintain the tort action. We therefore conclude that the conflict between the mother and the father must be resolved in favor of the mother.

## B

Next, we must resolve the conflicting claims of the natural mother and custodial parent and the third-party court-appointed corporate guardian.

Initially, the probate division became involved because the father petitioned the probate division for the appointment of a corporate guardian. The court denied his petition but reached the requested result by *sua sponte* appointing the Magna Bank as guardian of the estate to prosecute the child's tort action. The appointment was made by authority of section 11—5(a) of the Act, which states that "on its own motion, the court may appoint a guardian of the person or estate, or both, of a minor whenever it appears *necessary or convenient.*" (Emphasis added.) Ill. Rev. Stat. 1987, ch. 110½, par. 11—5(a).

The probate division has broad discretion in determining whether to appoint a guardian. (See *Layton v. Miller* (1975), 25 Ill. App. 3d 834.) This discretion is not unlimited and will be overturned if the reviewing court finds that the probate division abused its discretion. (*In re Marriage of Russell* (1988), 169 Ill. App. 3d 97, 103.) The appointment must be either "necessary or convenient." (Ill. Rev. Stat. 1987, ch. 110½, par. 11—5(a).) This determination must be made in light of all the relevant facts. The best interests of the child is the guiding standard. *In re Estate of Suggs* (1986), 149 Ill. App. 3d 793, 798.

The mother was awarded the sole "care, custody, control and education" of the minor child by the judgment of dissolution of her marriage to Henry. With respect to the custodial parent's authority, section 608(a) of the Illinois Marriage and Dissolution of Marriage Act (Marriage Act) provides, in pertinent part:

> "Except as otherwise agreed by the parties in writing at the time of the custody judgment or as otherwise ordered by the court, the custodian may determine the child's upbringing, including but not limited to, his education, health care and religious training, unless the court, after hearing, finds, upon motion by the noncustodial parent, that the absence of a specific limitation of the custodian's authority would clearly be contrary to the best interests of the child." (Ill. Rev. Stat. 1987, ch. 40, par. 608(a).)

Where the parents have not otherwise agreed, the award of custody under the Marriage Act confers upon the custodian the responsibility for all decisions concerning the child. Ill. Ann. Stat., ch. 40, par. 608(a), Historical & Practice Notes, at 82 (Smith-Hurd 1980).

Except upon a hearing and determination by the court that failure to limit the custodian's authority is clearly contrary to the best interests of the child, the custodial parent's authority over the child and all decisions concerning the child is plenary. (Ill. Rev. Stat. 1987, ch. 40, par. 608(a).) Upon the conferral of this plenary authority, the custodian becomes, in effect, the general guardian of the child. The term "general guardian" is defined as "one who has the general care and control of the person and estate of his ward." Black's Law Dictionary 635 (5th ed. 1979).

Absent a proper showing, the custodial parent's plenary authority over the child includes the right to prosecute litigation on the minor's behalf as next friend of the minor. In the case at bar, there has been no showing be-

fore any court that the mother's plenary authority is contrary to the best interests of the child and should therefore be limited.

The order of the probate division appointing the corporate guardian is in conflict with the prior judgment of the same circuit court which granted the mother, as custodial parent, plenary authority over the affairs of the child. The prior judgment order was not modified or repealed. Since a valid prior order fixed the responsibility for the child in the custodial parent, the order of the probate division was not "necessary."

The order appointing the bank to prosecute the minor's claim was entered after the mother retained counsel, commenced an investigation and had a case on file. Where a minor appears in court represented by a parent as next friend, and that representation is adequate, the appointment of a guardian is not necessary. (*In re Chicago, Rock Island & Pacific R.R. Co.* (7th Cir. 1986), 788 F.2d 1280, 1282; see *City of Danville v. Clark* (1976), 63 Ill. 2d 408, 411.) The record indicates that the mother's representation is adequate. Under the facts of this case, we conclude that the appointment of the bank as guardian of the child's estate to prosecute her personal injury claim is not "necessary."

We also conclude that the appointment of the corporate guardian is not "convenient." It interposes a third-party stranger into the lives of a mother and child and grants the stranger the power to control the litigation. The facts of this case do not justify such an intrusion. In addition, the appointment incurs an additional expense to compensate the bank without any showing that corresponding benefits will be created. This is not "convenient."

Having found that the appointment of the bank was neither "necessary or convenient," the conditions imposed by section 11—5(a) of the Act have not been met.

(See Ill. Rev. Stat. 1987, ch. 110½, par. 11—5(a).) Therefore, the order of the probate division is an abuse of discretion. Under the facts of this case, the custodial parent and natural mother is the proper party to prosecute the child's case.

## II

The probate division denied the mother's motion to intervene in the suit brought by the father as "next friend" on behalf of the child. The court did not make a dispositive ruling on the mother's motion to dismiss the father's suit.

The father is not a party to this appeal and his case on behalf of the child is still pending. We have determined that the father is disqualified to act as next friend of the child. In cases involving minor parties, it is fundamental that this court has a "duty to see that the rights of an infant are adequately protected, and [we are] bound to notice substantial irregularities even though objections are not properly presented on its behalf." (*Muscarello v. Peterson* (1960), 20 Ill. 2d 548, 555.) The probate division erred in failing to recognize the father's conflict of interest. Therefore, under the *Muscarello* doctrine, we correct this error and direct the circuit court to dismiss the personal injury complaint filed by the father as "next friend" of the child.

For the foregoing reasons, we reverse the judgments of the appellate court and the circuit court of St. Clair County and remand this cause to the circuit court with directions to dismiss the lawsuit filed by Henry Stevenson, as father and next friend of Tameka Stevenson.

*Appellate court reversed;*
*circuit court reversed;*
*cause remanded with directions.*