Rule 23 order filed
December 10, 2010;
Motion to publish granted
January 6, 2011.

NO. 5-10-0353

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

_____

| | |
|---|---|
| *In re* GUARDIANSHIP OF A.G.G., a Minor | ) Appeal from the |
| | ) Circuit Court of |
| (Victor Eck, | ) Jackson County. |
| | ) |
|     Petitioner-Appellant, | ) |
| | ) |
| v. | ) No. 10-P-49 |
| | ) |
| Jennifer Greer, | ) Honorable |
| | ) W. Charles Grace, |
|     Respondent-Appellee). | ) Judge, presiding. |

_____

JUSTICE GOLDENHERSH delivered the judgment of the court, with opinion.
Justices Welch and Stewart concurred in the judgment and opinion.

**O P I N I O N**

Victor Eck filed a petition for the guardianship of a minor, A.G.G., under the Probate Act of 1975 (Probate Act) (755 ILCS 5/11-5 (West 2008)) in the circuit court of Jackson County. After a hearing, the circuit court denied the petition. On appeal, Victor raises issues regarding whether the circuit court erred by denying the petition on the grounds of standing, without holding an evidentiary hearing on the issue. We reverse and remand with directions.

FACTS

On April 27, 2010, Victor filed a petition under the Probate Act, seeking the guardianship of A.G.G., a minor, born in 2007. See 755 ILCS 5/11-5 (West 2008). Victor stated that he had been caring for A.G.G. for the previous three years. Victor alleged that A.G.G.'s mother, Jennifer Greer, has been unable and unwilling to care for her and had relinquished that responsibility to him. Victor further alleged that A.G.G.'s biological father was unable and unwilling to care for her, as evidenced by the lack of any involvement in

1

A.G.G.'s life since her birth. At the same time, Victor filed a motion to enter an interim order and appoint a guardian *ad litem*.

The following day the court made a docket entry and entered a separate written order. In the docket entry, the court stated that the petition did not contain any detail on the relationship of Victor to A.G.G. and did not set forth all the allegations required by the Probate Act (755 ILCS 5/11-3 (West 2008)). The docket entry stated that Victor had 14 days to comply and that attorney Eugenia Hunter was appointed as the guardian *ad litem*. The written order of that date also stated that Hunter was appointed as the guardian *ad litem*. On May 11, 2010, Victor filed an amended petition for guardianship, in which he alleged that he was not the biological father of A.G.G. but was the only father figure A.G.G. has ever known.

On June 2, 2010, the court entered an interim order stating that the cause had been heard on the pending petition for a guardianship and a motion to enter an interim order. The order appointed Hunter as the guardian *ad litem* and authorized her to appoint Victor as the guardian if she deemed it to be in A.G.G.'s best interests. The order granted custody to Victor for the pendency of the proceedings.

On June 7, 2010, Jennifer filed a motion to dismiss the amended petition for a guardianship. Jennifer asserted that the allegations in the amended petition did not overcome the presumption that she is willing and able to carry out day-to-day child care decisions for A.G.G. Jennifer asserted that, thus, the trial court lacked jurisdiction to proceed on the petition. See 755 ILCS 5/11-5(b) (West 2008). Jennifer also filed a motion to vacate the interim order.

On June 7, 2010, the court entered several docket entries and a written order. In one of the docket entries, the court stated: "Court hears motion to vacate 6/2/10 Interim Order. Court continues Mot/Vacate, Motion to Dismiss." In the written order, the court set "[a]ll

2

pending" matters for June 21, 2010. On June 18, 2010, Victor filed a response to the motion to dismiss.

On June 21, 2010, the guardian *ad litem* submitted a report outlining her interviews of Jennifer, Victor, and A.G.G. The guardian *ad litem* stated that Jennifer "has difficulty with the truth or an exceptionally faulty memory." The guardian *ad litem* also noted that despite being educated, Jennifer had a sporadic work record and did not have the ability to support herself. The guardian *ad litem* reported that Jennifer had lived in approximately nine locations in the previous five years and was homeless at the time of the report. The guardian *ad litem* concluded as follows:

"If this were a custody case in which 'best interest' was the legal issue, I would have no hesitancy in recommending that the best interests of [A.G.G.] were with Victor Eck. This is, however, a guardianship case in which the standard is different and more complex. For this reason, I would prefer to withhold a recommendation until the evidence and testimony are presented."

On June 21, 2010, the court called the case for a hearing. The court began by discussing Jennifer's motion to dismiss for a lack of standing. Upon direct questioning by the court, the guardian *ad litem* responded that she thought Jennifer was entitled to an evidentiary hearing on the issue of standing. At that point, counsel for Jennifer stated that Victor had to meet the threshold of standing before the best interests of the child could be considered and that the guardian *ad litem*'s opinion should be limited to the issue of best interests. The court responded, "[The report of the guardian *ad litem*] has raised some concerns that the Court had and I think that this Court does have the inherent power, whether or not we get past that initial step, to look out for the best interest of the child; and I have some real concerns that have been raised by the guardian *ad litem*'s report and we're going to have evidence today and I'm going to make a determination."

3

Jennifer's counsel responded by asking the court whether this meant that the motion to dismiss had been denied. The court responded by asking if Jennifer's counsel would like to make an argument or statement for the record. The colloquy continued:

"[Counsel for Jennifer:] Certainly, your Honor. Then I would just like to state for the record that it is my understanding that the motion to dismiss this petition for guardianship has actually been based on a best standards or best interest of the child's standard and not on the statute under the Probate Act?

THE COURT: Are you asking the Court a question, Ms. Coward?

[Counsel for Jennifer:] I–originally, your Honor, I asked if the motion to dismiss had been denied.

THE COURT: Well I'll deny the motion to dismiss.

[Counsel for Jennifer:] Okay, and just for clarification, your Honor, it's being denied based on best interest of the child standard, is that correct?

THE COURT: You don't wish to argue your motion?

[Counsel for Jennifer:] No. That's a question, your Honor.

THE COURT: No, it's not being denied under the best interest of the child. This Court has inherent authority to look out for the best interest of the child and that's why we're proceeding on the amended petition today."

The court made the following docket entry: "6/21/10 Case called[;] parties, counsel, GA all present. Ct Denies Mot/D, proceeds to hearing on A.Pet." The court noted that after denying the motion to dismiss, it conducted a hearing over two days, at which both Victor and Jennifer presented testimony from several witnesses. The docket entry concluded, "Court finds that [Victor] has not proved by a preponderance of evidence that [Jennifer] as natural mother is not willing and able to make and carry out day-to-day child care decisions concerning the minor as per 5/11-5(b)." On June 28, 2010, the court entered a written order

4

denying the petition on the grounds that Victor had failed to rebut the presumption that Jennifer is willing and able to carry out day-to-day child care decisions.

Victor appeals.

## ANALYSIS

The results of the procedure used by the trial court are inherently unreliable. At the beginning of the proceedings of June 21, 2010, the trial court denied Jennifer's request to conduct an evidentiary hearing on the issue of standing. The court then proceeded to entertain evidence seemingly on the best interests of the minor. At the conclusion of the hearing, the court denied the petition, applying the standard for standing. The failure of the court to entertain a hearing on the standard on which it denied the petition undermines the credibility of its ruling and mandates a reversal.

Section 11-5 of the Probate Act dictates the grounds for the appointment of a guardian. 755 ILCS 5/11-5 (West 2008). In order to grant a petition for a guardianship, a trial court must make two evidentiary findings. Paragraph (a) provides that upon the filing of a petition the court may appoint a guardian as "the court finds to be in the best interest of the minor." 755 ILCS 5/11-5(a) (West 2008). Paragraph (b) provides that a court lacks jurisdiction to proceed on a petition if the minor has a parent "whose parental rights have not been terminated, whose whereabouts are known, and who is willing and able to make and carry out day-to-day child care decisions concerning the minor." 755 ILCS 5/11-5(b) (West 2008).

The standards of the best interests of the minor, in paragraph (a), and a parent who is "willing and able," in paragraph (b), are separate questions of fact. Historically, Illinois courts have found guidance in the Illinois Marriage and Dissolution of Marriage Act (Marriage Act) when determining the best interests of a minor in guardianship proceedings. 750 ILCS 5/602(a) (West 2008); *In re Marriage of Russell*, 169 Ill. App. 3d 97, 102, 523

5

N.E.2d 193, 197 (1988); *In re Estate of Suggs*, 149 Ill. App. 3d 793, 799, 501 N.E.2d 307, 310 (1986). After the recent amendment to the provision for the revocation of a guardianship, effective January 1, 2011, the Probate Act lists factors for determining best interests, including the interaction with the parent, the ability of the parent to provide a nurturing environment, and the stability of the parties. Pub. Act 96-1338 (eff. Jan. 1, 2011) (amending 755 ILCS 5/11-14.1 (West 2008)).

The question of whether a parent meets the willing-and-able standard set forth in paragraph (b) is a separate test from the best-interests-of-the-minor standard. Paragraph (b) sets forth a threshold for standing under the Probate Act that replaces a previous interpretation derived from the Marriage Act. *In re R.L.S.*, 218 Ill. 2d 428, 436, 844 N.E.2d 22, 28 (2006), *abrogating In re Person & Estate of Newsome*, 173 Ill. App. 3d 376, 379, 527 N.E.2d 524, 525 (1988); *In re Marriage of Haslett*, 257 Ill. App. 3d 999, 1006, 629 N.E.2d 182, 186 (1994); *In re Person & Estate of Barnhart*, 232 Ill. App. 3d 317, 320, 597 N.E.2d 1238, 1240 (1992). Paragraph (b) states, "There shall be a rebuttable presumption that a parent of a minor is willing and able to make and carry out day-to-day child care decisions concerning the minor, but the presumption may be rebutted by a preponderance of the evidence." 755 ILCS 5/11-5(b) (West 2008).

The seminal case instructing on the appointments of guardians under the Probate Act is *In re R.L.S.*, 218 Ill. 2d 428, 436, 844 N.E.2d 22, 28 (2006). *In re R.L.S.* held that the standing requirement contained in paragraph (b) protects the superior rights of parents and ensures that guardianship proceedings pass constitutional muster. *In re R.L.S.*, 218 Ill. 2d at 441, 844 N.E.2d at 31. *In re R.L.S.* explained the procedural protections outlined in section 11-5:

"By allowing a guardianship petition to proceed to a hearing on the merits over the wishes of a parent only when the parent has been established to be unwilling or unable

6

to carry out day-to-day child-care decisions, the Probate Act respects the superior rights of parents while also insuring to protect the health, safety, and welfare of children." *In re R.L.S.*, 218 Ill. 2d at 441, 844 N.E.2d at 31.

In the case at hand, the trial court denied the request for an evidentiary hearing on the standing issue and proceeded to entertain evidence supposedly on the remaining question of best interests. After the evidentiary hearing, the court did not rule on the question of best interests but dismissed the petition on the standard for standing. The proceedings before the trial court were, at best, muddled. The process both diverged from the burden created by a rebuttable presumption and undermined any claim that the issue of standing was actually heard.

The court's procedure displayed a misunderstanding of the nature of the standing requirement as a rebuttable presumption. Once a presumption is overcome, it ceases to operate. *In re Estate of Miller*, 334 Ill. App. 3d 692, 698, 778 N.E.2d 262, 267 (2002); *In re J.A.*, 316 Ill. App. 3d 553, 562, 736 N.E.2d 678, 686 (2000). The record indicates that by the court's prehearing comments and ruling on the motion to dismiss, the parties to the action were led to believe that the presumption had dissolved. Although the court might have initially erred against Jennifer by not holding a hearing on standing, the court prejudiced Victor by reviving the presumption after the conclusion of the evidence.

Ultimately, the court ruled on the standing issue without conducting an evidentiary hearing on the issue. The record indicates that the issue of whether Jennifer was a willing and able parent was not actually tried. The court denied the request for an evidentiary hearing on the issue of whether Jennifer was a willing and able parent and then proceeded to what was ostensibly a dispositional hearing on best interests. Thus, the parties were not on notice that the issue of standing was being considered by the court, and any evidence introduced on the issue was merely coincidental. Alternatively, the court's action could be characterized as

7

misinterpreting the test for best interests. Either way, the issue of standing was never tried.

The interpretation of comparable statutory schemes for determining custody supports a reversal. Under other statutory schemes, the fitness of a parent and the best interests of a child are seen as distinct matters, and courts have recognized the potential for prejudice and confusion when the issues are not addressed at separate hearings. *In re Adoption of Syck*, 138 Ill. 2d 255, 276, 562 N.E.2d 174, 184 (1990); *In re C.L.T.*, 302 Ill. App. 3d 770, 779, 706 N.E.2d 123, 129 (1999) (Adoption Act (750 ILCS 50/1 (West 1996))); *In re M.B.*, 332 Ill. App. 3d 996, 1004, 773 N.E.2d 1204, 1210 (2002) (Juvenile Court Act of 1987 (705 ILCS 405/2-3 (West 2000))). This court need not address whether it is possible for the separate issues of standing and best interests in the Probate Act to be considered at a consolidated proceeding. See *Freeman v. Settle*, 75 Ill. App. 3d 799, 804, 393 N.E.2d 1385, 1388 (1979) (the record indicated that the court and the parties clearly understood their responsibilities at a single hearing under the Adoption Act); see also *In re Custody of Gonzalez*, 204 Ill. App. 3d 28, 31-32, 561 N.E.2d 1276, 1278 (1990) (a waiver of the standing requirement in a custody case under the Marriage Act). At best, the proceedings in this case are so muddled that they leave the factual underpinnings of the court's decision unreliable.

Jennifer contends that Victor waived his right to appeal a lack of an evidentiary hearing on the standing issue. Victor did not object to the lack of a hearing on the standing issue. Indeed, Jennifer points out that Victor was perfectly happy with the trial court's prehearing ruling.

This, however, misconstrues why the proceedings were flawed. Victor had no reason to call for an evidentiary hearing on the standing issue, or even present evidence on the issue, because the trial court indicated that he had already been granted standing. Although Jennifer is able to point to comments by the trial court at the conclusion of the hearing referring to paragraph (b), the undeniable import of the trial court's prehearing comments was that the

8

ostensible purpose of the hearing was the question of bests interests, not standing. Thus, the trial court's conclusory ruling and posthearing comments defy application of the standard of review this court would apply if the issue had actually been tried. See *In re Guardianship of K.R.J.*, No. 4-10-0454, slip op. at 14-15 (Ill. App. Nov. 15, 2010) (describing the mixed standard of review applied when standing is tried).

The nature of the standing requirement as a protection for parents, instead of petitioners, does not diminish the magnitude of the trial court's error. The application of a standard for which there was no evidentiary hearing and the revival of a presumption that the court indicated had been overcome mandate a remand for an actual evidentiary hearing on the standing issue.

The comments of the trial court that Jennifer relies on for her claim of waiver raise other issues. Jennifer notes that the trial court referred to paragraph (b) after the conclusion of the evidence. The court stated that the Probate Act limited its consideration to acts of commission and excluded acts of omission as evidence. The Probate Act makes no such distinction.

The trial court also commented that the role of the guardian *ad litem* was limited to issues concerning the best interests of the minor. In denying the request for an evidentiary hearing on the issue of standing, the trial court suggested that the guardian *ad litem* would be precluded from commenting on whether Jennifer was a willing-and-able parent. Again, there is no basis for this limitation. The court had plenary jurisdiction over the person of the minor, and the authority to appoint the guardian *ad litem* was derived from common law. *In re Estate of Green*, 359 Ill. App. 3d 730, 737, 835 N.E.2d 403, 409 (2005).

## CONCLUSION

Accordingly, the order of the circuit court of Jackson County is hereby reversed, and the matter is remanded with directions to conduct an evidentiary hearing on standing as

9

described in the Probate Act (755 ILCS 5/11-5 (West 2008)).

Reversed; cause remanded with directions.

NO. 5-10-0353

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

| | | |
|---|---|---|
| *In re* GUARDIANSHIP OF A.G.G., a Minor | ) | Appeal from the |
| | ) | Circuit Court of |
| (Victor Eck, | ) | Jackson County. |
| | ) | |
|     Petitioner-Appellant, | ) | |
| | ) | |
| v. | ) | No. 10-P-49 |
| | ) | |
| Jennifer Greer, | ) | Honorable |
| | ) | W. Charles Grace, |
|     Respondent-Appellee). | ) | Judge, presiding. |

**Rule 23 Order Filed:**    December 10, 2010
**Motion to Publish Granted:**    January 6, 2011
**Opinion Filed**:    January 6, 2011

**Justices**:    Honorable Richard P. Goldenhersh, J.
    Honorable Thomas M. Welch, J., and
    Honorable Bruce D. Stewart, J.,
    Concur

**Attorney for Appellant**    Susan Burger, 105 Willards Ferry Road, Jonesboro, IL 62952

**Attorneys for Appellee**    Ann P. Coward/Sandi Gordon, Land of Lincoln Legal Assistance Foundation, Inc., 509 S. University Ave., 3rd Floor, Carbondale, IL 62901

    Eugenia C. Hunter, 905 W. Cherry, Carbondale, IL 62901 (guardian *ad litem*)