# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

### *In re Guardianship Estate of Tatyanna T.*, 2012 IL App (1st) 112957

---

| | |
|---|---|
| Appellate Court Caption | *In re* THE GUARDIANSHIP ESTATE OF TATYANNA T., a Minor (Cary T. and Frances T., Petitioners-Appellants, v. Francine Barnes, Respondent-Appellee). |
| District & No. | First District, Fifth Division<br>Docket No. 1-11-2957 |
| Filed | August 10, 2012 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | The dismissal of a petition for plenary guardianship of respondent's child was upheld where petitioners failed to present evidence that respondent knowingly waived or abandoned her right to custody of the child or relinquished physical custody to petitioners, despite the fact that respondent allowed the child to live with petitioners from the time she was born until she was seven, since there was no formal designation of petitioners as guardians, respondent's parental rights were not terminated, and the testimony that respondent's arrangement with petitioners was temporary was not refuted. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 11-P-302; the Hon. Kathleen H. McGury, Judge, presiding. |
| Judgment | Affirmed. |

Counsel on
Appeal

Michelle Broughton-Fountain, of Flossmoor, for appellants.

No brief filed for appellee.

Panel

JUSTICE McBRIDE delivered the judgment of the court.
Presiding Justice Epstein and Justice Howse concurred in the judgment and opinion.

**OPINION**

¶ 1      Pursuant to an oral agreement between the parties, petitioners Cary T. and her daughter, Frances T., cared for Tatyanna T., respondent's biological daughter, in their home from the time Tatyanna was born until she was seven years old, at which point she began living with respondent. Petitioners thereafter filed a petition for guardianship over Tatyanna, arguing that respondent had voluntarily relinquished custody of Tatyanna to them. Respondent filed a motion to dismiss that petition, which the trial court granted. This appeal followed.

¶ 2                                    I. BACKGROUND

¶ 3      On January 14, 2011, petitioners filed a petition for guardianship over Tatyanna. That petition indicated that Tatyanna was born on July 10, 2003 to Tatyanna's biological mother, respondent, and an unknown father. Two days after her birth, Tatyanna's mother gave Tatyanna to petitioners, who raised her in their home for approximately seven years. On November 19, 2010, respondent requested that petitioners return Tatyanna to her, which they did. Petitioners argued that because respondent had minimal contact with Tatyanna during her time living with them, and because Tatyanna was unhappy living with respondent, it was in the best interest of Tatyanna that they be appointed her plenary guardians.

¶ 4      On February 9, 2011, respondent filed a *pro se* response to the petition. In that response, respondent alleged that she had entered into a verbal agreement with Cary following Tatyanna's birth, pursuant to which Cary "would help [respondent] take care of Tatyanna [T.] till [*sic*] [she] got on [her] feet." Her response further indicated that Tatyanna was currently living with respondent and that it was in Tatyanna's best interest that respondent remain plenary guardian of her. Her response also indicated that Tatyanna was "ok and happy" and "comfortable" living with respondent, as well as respondent's mother and other daughter, Tatyanna's sister. Respondent acknowledged that petitioners provided financial support and education to Tatyanna for most of her life and that Tatyanna remained in contact with petitioners while living in her home.

¶ 5      On May 24, 2011, petitioners moved for temporary custody of Tatyanna, which the trial

court denied. The court further granted respondent a continuance to obtain counsel, which she did.

¶ 6        On September 12, 2011, through the aid of counsel, respondent filed a motion to dismiss the petition for guardianship, arguing that because she was willing and able to care for Tatyanna, because she never relinquished custody, and because she remained involved in Tatyanna's life, the trial court lacked jurisdiction to entertain petitioners' request to become Tatyanna's plenary guardian.

¶ 7        On September 12, 2011, evidence was presented and oral arguments were heard on respondent's motion. Respondent testified first on her own behalf. She acknowledged that she was 16 when Tatyanna was born and that she entered into a verbal agreement with Cary, her brother's stepmother, under which Cary "would help [respondent] until [she] was able to become an old enough person to take care of [Tatyanna] and get [herself] together as far as getting a high school diploma and finishing school, which [she] did." Respondent stated that Tatyanna had lived with petitioners since shortly after she was born, but that she would see Tatyanna on holidays, birthdays, "get-togethers," and "every weekend." Respondent also testified that Tatyanna would stay with her every other summer for two or three weeks at a time.

¶ 8        Respondent next called Frances. Frances testified that respondent gave Tatyanna to Frances and Cary once respondent and her daughter were released from the hospital. Frances indicated that at that time, she was worried that respondent was going to "come back for [Tatyanna] later." Frances also said that she and Cary had wanted to become guardians over Tatyanna but despite their requests, respondent refused to sign papers granting them guardianship of Tatyanna on several occasions. Frances admitted that on several occasions, she took Tatyanna to respondent's home.

¶ 9        Respondent called Cary as her last witness. Cary testified that she began caring for Tatyanna soon after her birth. She stated that respondent did not see Tatyanna "very often," and that she and Frances took Tatyanna to most of her doctor's appointments, but admitted that respondent also took her "a few times." Cary testified that respondent would not see Tatyanna every year and that respondent saw Tatyanna approximately six times in 2003, three times in 2004, and four times in 2005. Overall, she stated, Tatyanna stayed with respondent for approximately eight weekends during the seven years Tatyanna lived with Cary and Frances.

¶ 10       Following Cary's testimony, petitioners moved for the appointment of a guardian *ad litem* due to the significant factual differences in the testimony between respondent and petitioners. The trial court denied that motion, concluding that the hearing was limited to respondent's motion to dismiss the petition, and the appointment of a guardian *ad litem* was inappropriate because the only issue before it was "whether or not there is a parent who's willing and able to make the day-to-day decisions."

¶ 11       Petitioners then proceeded with their case, calling Cary as their first witness. Cary testified that she had concerns about respondent's ability to carry out the day-to-day child-

care decisions for Tatyanna, including respondent's ability to feed and clothe her. Cary, however, indicated that she told Tatyanna over the phone that she was keeping Tatyanna's clothing and toys she had received for Christmas "until she come[s] home."

¶ 12    Frances testified next on her own behalf, and her testimony was similar to Cary's, further indicating that she shared Cary's concerns about respondent's ability to care for Tatyanna.

¶ 13    Following arguments, the trial court stated that while there were "definitely discrepancies in the facts," the situation "was amicable between the parties; and it seemed to work for the child." The court then held that petitioners failed to rebut the presumption that respondent was able to care for Tatyannna, stating that "where parents are involved, they do have superior rights. And the only way they can be compromised *** is a very formal written consent, or in adoption cases where they have the [*sic*] surrender. The law protects parents, and that's why they have that advantage."

¶ 14    The court then granted respondent's motion to dismiss petitioners' petition and petitioners timely appealed. Although respondent has not filed an appellee's brief, we may nevertheless consider this appeal pursuant to the principles set forth in *First Capitol Mortgage Corp. v. Talandis Construction Corp.*, 63 Ill. 2d 128, 131-33, 345 N.E.2d 493 (1976).

¶ 15                                    II. ANALYSIS

¶ 16    On appeal, petitioners argue that because respondent conveyed a "constructive guardianship" over Tatyanna to them, the trial court erred in dismissing their petition for lack of jurisdiction. Specifically, they assert that respondent "relinquished physical custody of [Tatyanna]" to them, thus granting the trial court jurisdiction to entertain their petition pursuant to the Probate Act of 1975 (755 ILCS 5/1-1 *et seq.* (West 2008)). We disagree.

¶ 17    Before addressing the merits of petitioners' claims, we must note that their brief fails to comply with several of the requirements of Illinois Supreme Court Rule 341. Ill. S. Ct. R. 341 (eff. Mar. 16, 2007). That rule provides that all briefs should contain a statement of compliance (Ill. S. Ct. R. 341(c)), a statement containing "the facts necessary to an understanding of the case, stated accurately and fairly" (Ill. S. Ct. R. 341(h)(6)), and an argument "which shall contain the contentions of the appellant and the reasons therefor, with citation of the authorities *** relied on" (Ill. S. Ct. R. 341(h)(7)). This court has the discretion to strike an appellant's brief and dismiss an appeal for failure to comply with this rule. *Alderson v. Southern Co.*, 321 Ill. App. 3d 832, 845 (2001).

¶ 18    Petitioners' brief contains a statement of facts that is only two sentences in length and indicates little more than a statement that a petition for guardianship was filed and that respondent filed a *pro se* response. Moreover, the argument section of petitioners' brief cites only one case–incorrectly–for their proposed standard of review. It fails to point us to any authority to support petitioners' contentions. While these deficiencies render petitioners' brief inadequate, and provide this court with ample grounds to dismiss petitioners' appeal,

because of the important nature of this case, we will nevertheless address the merits of their claims. See *Alderson*, 321 Ill. App. 3d at 845 (addressing an appeal on the merits, despite appellant's "grossly inadequate" statement of facts, because the interests of justice so required).

¶ 19 When a court grants a motion to dismiss following an evidentiary hearing, " 'the reviewing court must review not only the law but also the facts, and may reverse the trial court order if it is incorrect in law or against the manifest weight of the evidence.' " *Hernandez v. New Rogers Pontiac, Inc.*, 332 Ill. App. 3d 461, 464 (2002) (quoting *Kirby v. Jarrett*, 190 Ill. App. 3d 8, 13 (1989)). "A trial court's ruling is against the manifest weight of the evidence only if it is unreasonable, arbitrary and not based on the evidence, or when the opposite conclusion is clearly evident from the record." *In re Estate of Michalak*, 404 Ill. App. 3d 75, 96 (2010). "In reviewing a probate court's determination, all reasonable presumptions are made in favor of the trial court, the appellant has the burden to affirmatively show the errors alleged, and the judgment will not be reversed unless the findings are clearly and palpably contrary to the manifest weight of the evidence." *In re Estate of Vail*, 309 Ill. App. 3d 435, 438 (1999). In any event, "we may affirm on any basis appearing in the record, whether or not the trial court relied on that basis." *Mitsias v. I-Flow Corp.*, 2011 IL App (1st) 101126, ¶ 47.

¶ 20 Generally, under the Probate Act, once a petition for guardianship is filed, "the court may appoint a guardian *** of a minor *** as the court finds to be in the best interest of the minor." 755 ILCS 5/11-5(a) (West 2008). However, the court lacks jurisdiction to hear a petition for the appointment of a guardian of a minor when:

"(i) the minor has a living parent *** whose parental rights have not been terminated, whose whereabouts are known, and who is willing and able to make and carry out day-to-day child care decisions concerning the minor, *unless: (1) the parent or parents voluntarily relinquished physical custody of the minor; (2) after receiving notice of the hearing under Section 11-10.1, the parent or parents fail to object to the appointment at the hearing on the petition; or (3) the parent or parents consent to the appointment as evidenced by a written document that has been notarized and dated, or by a personal appearance and consent in open court; or (ii) there is a guardian for the minor appointed by a court of competent jurisdiction.* There shall be a rebuttable presumption that a parent of a minor is willing and able to make and carry out day-to-day child care decisions concerning the minor, but the presumption may be rebutted by a preponderance of the evidence." (Emphasis added.) 755 ILCS 5/11-5(b) (West 2010).

¶ 21 "[T]he standing requirement contained in paragraph (b) protects the superior rights of parents and ensures that guardianship proceedings pass constitutional muster." *In re Guardianship of A.G.G.*, 406 Ill. App. 3d 389, 394 (2011). That section establishes the threshold statutory requirement that a petitioner must meet before the court can proceed to a determination of the best interests of a child. *In re R.L.S.*, 218 Ill. 2d 428, 436 (2006).

¶ 22 Paragraph (b) was recently amended, effective January 1, 2011, to include language granting standing to petitioners when a parent who is otherwise alive and willing and able

to care for the child has "voluntarily relinquished physical custody of the minor." 755 ILCS 5/11-5(b) (West 2010). In the instant case, the arrangement of Tatyanna's care took place and was terminated before this amendment took effect.

¶ 23     Here, there is no dispute that respondent, the biological mother, is alive, that her parental rights have not been formally terminated, and that her whereabouts are known. While there was disagreement below as to whether she was willing and able to make decisions regarding Tatyanna's care, petitioners appear to maintain that this is irrelevant because, they assert, respondent voluntarily relinquished physical custody of Tatyanna, thus granting them standing under paragraph (b), as amended.

¶ 24     As pointed out above, paragraph (b), as it now exists, was not in effect when respondent entered into the arrangement of Tatyanna's care with petitioners or when Tatyanna was returned to respondent in November 2010. We note that prior to 1986, the Probate Act contained no standing requirement for nonparents seeking guardianship over a minor. In response to this, our courts turned to the language of the Illinois Marriage and Dissolution of Marriage Act (the Marriage Act) (now see 750 ILCS 5/101 *et seq.* (West 2008)) for guidance. In *In re Person & Estate of Newsome*, 173 Ill. App. 3d 376 (1986), the appellate court, seeking to protect the superior rights of parents, adopted the Marriage Act's standing requirement and held that in order to have standing, a nonparent seeking custody under the Probate Act had to first establish that the child was not in the physical custody of one of his biological parents. See *Newsome*, 173 Ill. App. 3d at 379. In response to *Newsome*, the Probate Act was amended to require a nonparent seeking guardianship to establish that the child did not have a parent "whose parental rights have not been terminated, whose whereabouts are known, and who is willing and able to make and carry out day-to-day child care decisions concerning the minor, unless the parent *** consent[s] to the appointment." 755 ILCS 5/11-5(b) (West 2004). These amendments eliminated the Marriage Act's "physical custody" requirement for standing applied to the Probate Act through *Newsome* and its progeny. In 2006, our supreme court overruled *Newsome* and held that courts should only apply the Probate Act's "willing and able" standard when making standing decisions, rather than the "physical custody" standard. *In re R.L.S.*, 218 Ill. 2d 428 (2006). Thus, after *R.L.S.* was decided, Illinois courts were effectively prohibited from denying standing to a nonparent seeking guardianship over a minor, even if that minor was in the physical custody of his biological parent, so long as that petitioner could establish that the parent is not "willing and able to make and carry out day-to-day child care decisions concerning the minor." 755 ILCS 5/11-5(b) (West 2004).

¶ 25     It appears that in response to *R.L.S.*, our legislature again amended paragraph (b) in 2011, codifying *Newsome*'s and the Marriage Act's "physical custody" standard, thus allowing a nonparent petitioning for guardianship to have standing, even if the biological parent is otherwise able to care for the child, if the parent's custody has been voluntarily relinquished. In our opinion, this recent amendment to paragraph (b) represents a substantive change in the law which cannot be applied retroactively to respondent. See *Doe A. v. Diocese of Dallas*, 234 Ill. 2d 393, 406 (2009); *Schweickert v. AG Services of America, Inc.*, 355 Ill. App. 3d 439, 443 (2005) ("a substantive change in law establishes, creates, or defines rights"); *People*

*v. Kilpatrick*, 293 Ill. App. 3d 446, 448 (1997) (declining to apply a law retroactively because doing so would deprive a defendant of an existing right). Because the amendment to paragraph (b) provides an additional avenue for a nonparent to obtain standing under the Probate Act, we are unwilling to accept petitioners' argument and subject respondent to the amended version of paragraph (b) that was neither in effect when, at the age of 16, she placed her newborn second child in the care of petitioners on, what appears from the record to be, a limited and temporary basis, nor when Tatyanna returned to live with her. Moreover, when applying the prior version of paragraph (b), we can see nothing in the record which would tend to support the conclusion that respondent "consent[ed] to the appointment" of petitioners as Tatyanna's guardians.

¶ 26    The prior version of paragraph (b), which is applicable here, granted standing to petitioners only in limited situations where the child's parent consented to the guardianship or the child had no living parent who was able care for the child. 755 ILCS 5/11-5(b) (West 2008). "This limitation exists to protect the parent's superior rights to the custody and care of her child." *In re T.P.S.*, 2011 IL App (5th) 100617, ¶ 14. "[I]n child-custody disputes it is an accepted presumption that the right or interest of a natural parent in the care, custody and control of a child is superior to the claim of a third person." (Internal quotation marks omitted.) *In re Custody of Peterson*, 112 Ill. 2d 48, 51 (1986). The language of the Probate Act in effect at that time indicated that a biological parent could designate a person to be appointed guardian of her child *only if* certain conditions were met. Such a designation had to be in writing and "witnessed by 2 or more credible witnesses at least 18 years of age, neither of whom is the person designated as the guardian." 755 ILCS 5/11-5(a-1) (West 2008). We are unable to find anything in the Probate Act, or in our case law, which would suggest that a parent could, in an out-of-court context, orally consent to the appointment of a guardian over her child, and petitioners have provided us with no compelling reason to persuade us otherwise.

¶ 27    The record indicates that no such written designation was ever made, let alone witnessed by two disinterested individuals, as envisioned by the Probate Act. In fact, the record clearly shows that respondent explicitly refused, on several occasions, petitioners' requests to execute such documentation, making them guardians over Tatyanna. Nor is there anything in the record suggesting that the trial court, on its own motion, ever appointed a guardian over Tatyanna. See 755 ILCS 5/11-5(a) (West 2008). Instead, the unrebutted testimony of respondent indicates that the arrangement of care between her and petitioners was temporary in nature and was never intended to represent her consent to them being appointed guardians.

¶ 28    Accordingly, because petitioners have failed to provide any evidence to support a finding that respondent consented to the appointment of a guardian, pursuant to the prior version of paragraph (b), the trial court did not err when it dismissed petitioners' petition for guardianship over Tatyanna for want of jurisdiction.

¶ 29    Assuming arguendo we were to apply the amended version of paragraph (b) to the facts of this case, our decision would be the same because the record indicates that respondent never voluntarily relinquished physical custody over Tatyanna. Given the recent adoption of

the amendments to paragraph (b), our case law is silent as to what must occur for a parent to voluntarily relinquish physical custody in proceedings under the Probate Act. While petitioners' brief fails to cite a single authority providing guidance on the subject, we note that our courts have defined "voluntary relinquishment" as the affirmative act of waiving or abandoning a known right. See *Buenz v. Frontline Transportation Co.*, 227 Ill. 2d 302, 321 (2008); *Nowak v. St. Rita High School*, 197 Ill. 2d 381, 397 (2001); *Maniez v. Citibank, F.S.B.*, 404 Ill. App. 3d 941, 947 (2010).

¶ 30 We further note that a provision similar to paragraph (b) in the Marriage Act provides us with some guidance on this issue. See 750 ILCS 5/601 (West 2008); see also *Guardianship of A.G.G.*, 406 Ill. App. 3d at 393 (stating that Illinois courts have historically found guidance in the Marriage Act when making determinations of custody under the Probate Act). In light of the recent amendments to this section, which, as noted above, incorporate the Marriage Act's "physical custody" standard, we will rely on the body of case law regarding "physical custody" when interpreting paragraph (b).

¶ 31 Under section 601(b)(2) of the Marriage Act, a nonparent may commence custody proceedings for a child "only if he is not in the physical custody of one of his parents." 750 ILCS 5/601(b)(2) (West 2008). Our supreme court has held that a determination under section 601(b)(2) "should not turn on who is in physical possession, so to speak, of the child at the moment of filing the petition for custody." *In re Custody of Peterson*, 112 Ill. 2d 48, 53-54 (1986). In fact, a determination of physical custody under the Marriage Act "turns not on possession; rather, it requires that that parent somehow has voluntarily and indefinitely relinquished custody of the child." *In re Marriage of Rudsell*, 291 Ill. App. 3d 626, 632 (1997). Instead, our courts have held that "not every voluntary turnover of a child will deprive the parent of physical custody. Rather, the court must consider such factors as (1) who was responsible for the care and welfare of the child prior to the initiation of custody proceedings; (2) the manner in which physical possession of a child was acquired; and (3) the nature and duration of the possession." *In re A.W.J.*, 316 Ill. App. 3d 91, 96 (2000).

¶ 32 Here, petitioners have failed to address any of the aforementioned factors and instead resort to restating the factual arguments they made before the trial court, namely, that respondent "did not help care for Tatyanna, *** did not take her to doctor appointments, rarely spen[t] her birthdays and holidays with her, did not assist with her homework, and did not have weekend visitations with her."

¶ 33 Petitioners have provided no evidence that respondent knowingly waived or abandoned her right to custody of Tatyanna or relinquished physical custody of her. As mentioned above, there was never any formal designation of petitioners as guardians over Tatyanna, nor were respondent's parental rights ever terminated. Moreover, petitioners cite nothing in the record, nor can we find anything, which refutes the uncontradicted testimony of respondent that her arrangement with petitioners was temporary in nature. Neither Frances nor Cary provided any evidence suggesting that respondent waived or voluntarily relinquished her rights and granted petitioners custody over Tatyanna. Moreover, they have failed to cite a single case in support of their proposition that respondent conveyed a "constructive

guardianship" over Tatyanna to them. Not only do they fail to point to anything in the record which would indicate that a "constructive guardianship" was ever conveyed, a review of state and federal cases in all 50 states fails to yield even a single case recognizing or accepting the existence of a "constructive guardianship" over a minor.

¶ 34    Moreover, petitioners have failed to offer any compelling evidence that respondent granted them physical custody over Tatyanna. Applying the factors laid out in *In re A.W.J.*, we find sufficient evidence to support the trial court's decision. First, the record indicates that respondent presented evidence that she was involved in many aspects of Tatyanna's care and welfare prior to the initiation of custody proceedings, including being present for birthdays and holidays, and having Tatyanna stay with her on numerous occasions. Second, it is undisputed that in November 2010, Frances voluntarily brought Tatyanna to respondent's home upon her request. It is also noteworthy that respondent repeatedly rejected petitioners' requests to grant them custody of Tatyanna in a written document. Additionally, respondent presented evidence that the arrangement she made with petitioners was inherently temporary in nature and that respondent always intended to retain custody of Tatyanna once respondent "got on [her] feet." We finally note that at the time of the hearing, Tatyanna had been living with respondent for close to a year and petitioners failed to produce any competent evidence indicating that respondent was either unwilling or unable to carry out the day-to-day child-care decisions.

¶ 35    While, as the trial court correctly noted, there were "definitely discrepancies in the facts," these factual findings are nevertheless entitled to great deference on review because only the trial court "is in the best position to observe the conduct and demeanor of the parties and the witnesses." *Estate of Michalak*, 404 Ill. App. 3d at 96. This court may not "substitute its judgment for that of the trial court regarding the credibility of witnesses, the weight to be given to the evidence, or the inferences to be drawn." *In re D.F.*, 201 Ill. 2d 476, 499 (2002). Consequently, despite the discrepancies in the facts, we are unwilling to say that the trial court's ruling that petitioners' petition failed to overcome the presumption in favor of respondent's rights as Tatyanna's biological mother was against the manifest weight of the evidence.

¶ 36                                    III. CONCLUSION

¶ 37    For the foregoing reasons, the decision of the trial court granting respondent's motion to dismiss petitioners' petition for plenary guardianship over Tatyanna is affirmed.

¶ 38    Affirmed.